UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

BOLTON MANAGEMENT, LLC and
DR. BRETT BOLTON,

       Plaintiffs,

v.

BRYAN GILE,

       Defendant.

Case No. 26-cv-61415-WPD

## DEFENDANT'S MOTION TO DISMISS AND FOR AWARD OF ATTORNEY'S FEES

Plaintiffs Bolton Management, LLC and Brett Bolton bring this lawsuit for defamation, tortious interference, and breach of oral contract against Defendant Bryan Gile, based on several unspecified comments Mr. Gile allegedly made on Reddit.com concerning his opinion that Dr. Bolton botched his hair transplant.

The Complaint should be dismissed because, among other things: (1) Plaintiffs have not alleged a viable defamation claim based on the limited, incomplete, and contextless statements alleged; (2) texts to Plaintiffs' staff are not actionable; (3) the sole statements specifically alleged—that Dr. Bolton "chose" the style for the hair transplant or is a "butcher"—are not defamatory; (4) Plaintiffs fail to plead publication to third parties; (5) Plaintiffs fail to plead special damages; (6) Plaintiff is a limited purpose public figure and has not demonstrated the requisite degree of fault; (7) the single-action rule bars duplicative claims; (8) Plaintiffs fail to allege a business relationship; and (9) Plaintiffs fail to state a claim for breach of contract.

Because this lawsuit is a Strategic Lawsuit Against Public Participation under Florida law, the Court should also award Mr. Gile is reasonable attorney's fees for defending this baseless action.

## I.   FACTUAL BACKGROUND

Plaintiff Brett Bolton provides hair transplants in the South Florida area. *See* Compl. ¶¶ 7–9. Dr. Bolton is the sole member of Bolton Management. *Id.* ¶ 4. In 2025, Dr. Bolton performed a hair transplant on Mr. Gile in Fort Lauderdale. *See id.* ¶ 10.

Following the hair transplant, Mr. Gile sent various messages to Plaintiffs and their staff. *Id.* ¶ 11. At some point following the transplant, Mr. Gile posted about the procedure on Reddit.com. *Id.* ¶ 13. Nowhere in the Complaint do Plaintiffs allege the substance of those statements, their context, the date of posting, or to whom the posts were directed.

Plaintiffs complain that the posts are false because Mr. Gile asserted that Dr. Bolton "chose" Mr. Gile's hairline. *Id.* ¶ 14.

Plaintiffs sent a cease-and-desist letter to Mr. Gile. *Id.* ¶ 17. Mr. Gile indicated that he would delete previous posts but he did "not wan[t] to sign a proposal." *Id.* Ex. 3. Mr. Gile indicated that the deletion of a previous post was "contingent on [Plaintiffs] dismissing"—and then the text message cuts off. *See id.* Ex.3 at 4.

Plaintiffs then sent a second cease-and-desist letter "providing the evidence demonstrating the new posts and comments contained the same or similar knowingly false statements, which was contrary to the parties' oral agreement that Defendant remove and cease such statements." *Id.* ¶ 20. Plaintiff did not append or include any such allegedly defamatory statements in the Complaint or any exhibits thereto.

As relief for his claims, Plaintiffs seek damages for defamation *per se*, defamation *per quod*, breach of oral agreement, and tortious interference with a business relationship.

Plaintiffs' Complaint should be dismissed.

## II.    ARGUMENT

Florida courts stress the prominent function courts play in defamation cases and favor the early dismissal of untenable claims. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("application of the plausibility pleading standard makes particular sense when examining public figure defamation suits [because] in these cases there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation"); *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (discussing the court's "prominent function" in defamation cases to "either dismiss[] the complaint for failure to state a cause of action or [ ] grant[] a directed verdict at the proof stage"). To be sure, pretrial disposition is especially appropriate in defamation cases because of "the chilling effect" these cases have on First Amendment rights. *Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978).

Plaintiffs' Complaint cannot survive this Court's scrutiny under the Federal Rules of Civil Procedure, and disposition of this case at the dismissal stage is appropriate. In order to state a valid defamation claim under Florida law, Plaintiffs must plead and prove these elements: (1) a false and defamatory statement of and concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) damages. *Mile Marker, Inc. v. Petersen Publ'g, LLC*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002) (citing *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 804 (Fla. 1st DCA 1997)); *see also Readon v. WPLG, LLC*, So.3d 1229, 1235 (Fla. 3d DCA 2021), *review denied*, 2021 WL 3523557 (Fla. Aug. 11, 2021).

3

A written publication constitutes libel *per se* under Florida law if, when considered alone and without innuendo, it: "(1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015) (applying Florida law). When a libel plaintiff raises a defamation claim as actionable *per se*, it need not plead or prove malice, except when a privilege applies, or special damages. *Wolfson v. Kirk*, 273 So. 2d 774, 777 (Fla. 4th DCA 1973).

Plaintiffs' Complaint fails to state a claim for which relief can be granted for several independent reasons.

### A. The Complaint Should Be Dismissed Because Plaintiffs Do Not Allege Any Defamatory Statements

The Court should dismiss the Complaint because Plaintiffs do not allege any statements, and the single statement alleged—that Plaintiffs "chose" Mr. Gile's hairline—is incomplete, lacking context, not defamatory, and opinion. *Murray v. Pronto Installations, Inc.*, 2020 WL 6728812, at *6 (M.D. Fla. Nov. 16, 2020) (finding the context of the statements suggested they could not impute conduct "incompatible with the essential functions of [his job], when the context of the statements is considered.") (quoting *Scobie v. Taylor*, 2013 WL 3776270, at *3 (S.D. Fla. July 17, 2013).

In Florida, a libel plaintiff must demonstrate that each challenged statement conveys a defamatory meaning—something factually false and damaging to plaintiff's reputation, when given an ordinary and natural reading in context based on its plain language. *Seropian v. Forman*, 652 So. 2d 490, 495 (Fla. 4th DCA 1995). When a plaintiff merely relays information, there is no defamatory meaning sufficient to support a claim. *See* Robert D. Sack, SACK ON DEFAMATION, § 2:4.1 (5th ed. 2018) ("a communication that is merely unflattering, annoying,

4

irksome, or embarrassing, or that hurts only the plaintiff's feelings, is not actionable"); *Parekh v. CBS Corp., et al.*, 820 F. App'x 827, 833 (11th Cir. 2020) (affirming dismissal of defamation claims with prejudice where statements were not capable of defamatory meaning). A statement is defamatory if it "exposes a person to distrust, hatred, contempt, ridicule or obloquy or which causes such person to be avoided, or which has a tendency to injure such person in his office, occupation, business or employment." *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 803 (Fla. 1st DCA 1997).

In the defamation *per* se context, courts are constrained to look to the four corners of the publication in determining whether there is libel *per se*. *Barry College v. Hull*, 353 So. 2d 575, 578 (Fla. 3d DCA 1977). A *per se* defamation claim exists only where words "upon their face and without the aid of extrinsic proof were injurious." *Boyles v. Mid-Fla. Television Corp.*, 431 So. 2d 627, 633 (Fla. 5th DCA 1983), *approved*, 467 So. 2d 282 (Fla. 1985) (quotations and citation omitted). Accordingly, if the court is "required to read words into the [publication] that are not there," it is not libel *per se*. *Eakin v. Rosen*, No. 7:15-CV-224, 2017 WL 5709564 (M.D. Ga. Nov. 27, 2017), appeal dismissed, 2018 WL 1580983 (11th Cir. Mar. 9, 2018).

Here, the alleged statements at issue are: (1) unspecified alleged defamatory statements on Reddit (or possibly elsewhere); (2) texts to Plaintiffs' staff; and (3) that Plaintiffs "chose" Mr. Gile's hairline and is a "butcher," which are incomplete and contextless. Each is addressed below.

### 1. Unidentified statements cannot form the basis of a defamation claim.

First, to the extent Plaintiffs seek relief for any statements not specifically identified in the Complaint. The failure to identify a specific statement in sufficient context is grounds for dismissal. *Scott v. Busch*, 907 So.2d 662, 667 (Fla. 5th DCA 2005); *Edward L. Nezelek, Inc. v.*

*Sunbeam Television Corp.*, 413 So. 2d 51, 55 (Fla. 3d DCA 1982) (requiring "sufficient particularity to enable the court to determine whether the publication was defamatory"); *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012) (plaintiff "must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred"). Accordingly, Plaintiffs cannot seek relief for other unidentified statements.

### 2. The statement—that a hairline was "chosen"—is excerpted, incomplete, and contextless.

Next, the Complaint should be dismissed because the sole statement alleged—that Plaintiffs "chose" Mr. Gile's hairline is incomplete. Indeed, to determine whether the statements contain defamatory meaning, or are "pure opinion" or "rhetorical hyperbole" courts look to whether comments are made based on facts which are "otherwise known or available to the reader or listener as a member of the public." *From v. Tallahassee Democrat, Inc.*, 400 So.2d 52, 57 (Fla. 1st DCA 1981).

In determining whether an allegedly defamatory statement is an expression of fact or an expression of opinion or rhetorical hyperbole, "context is paramount." *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379–80 (S.D. Fla. 2006). Courts must evaluate an allegedly defamatory publication not by "extremes, but as the common mind would naturally understand it." *McCormick v. Miami Herald Publ'g Co.*, 139 So. 2d 197, 200 (Fla. 2d DCA 1962). In other words, "the statement should be considered in its natural sense without a forced or strained construction." *Byrd*, 433 So. 2d at 595. In making such consideration, courts should

> examine the statement in its totality and the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all

of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.

*From*, 400 So.2d at 57; *Horsley v. Rivera*, 292 F.3d 695, 702 (11th Cir.2002) ("In determining whether [the defendant's] statement is entitled to protection as rhetorical hyperbole, we must consider the circumstances in which the statement was expressed."). As the First District Court of Appeal in *From* explains, beyond the context of the statements in their totality, the medium of publication is important to determining whether the statement is opinion or hyperbole. For example, "reasonable readers of most Facebook pages do not understand posts to be conveying factual information." *Murray*, 2020 WL 6728812, at *9–10 (citation omitted).

Here, Plaintiffs do not provide any context for this statement. In context, it is likely true or substantially true—that Plaintiffs did "choose" Mr. Gile's hairline, which Mr. Gile then approved. Moreover, the context matters as to where the statement was made. If it was on Reddit, which seems plausible, such medium is a hotbed for rhetorical hyperbole. The Complaint nevertheless fails on the basis that the statement is excerpted and incomplete, thus rendering it impossible for the Court to consider them in their context, as *From* demands. Without the complete passage or Reddit thread, Plaintiffs expect the Court to take a cherry-picked statement in response to an incomplete conversation and assign it defamatory meaning. Where "context is paramount," Plaintiffs' Complaint is wanting. On this basis is should be dismissed for failure to provide the complete context of the alleged statements.

### 3. Calling Dr. Bolton a "butcher" is classic opinion or rhetorical hyperbole.

The sole remaining excerpted statement—that Dr. Bolton is a "butcher"—is protected speech. To begin, "opinions cannot be defamatory." *Hoon v. Pate Construction Co.*, 607 So. 2d 423, 429 (Fla. 4th DCA 1992). This concept is grounded on a very simple premise, that under the First Amendment "there is no such thing as a false idea." *See Gertz v. Robert Welch, Inc.*, 418

U.S. 323, 339 (1974). "However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Id*. at 339–40. The determination of whether a statement is protected opinion hinges on whether the statement is objectively falsifiable. *See Santilli v. Van Erp*, 2018 WL 2172554, at *5–6 (M.D. Fla. Apr. 20, 2018).

Rhetorical hyperbole, on the other hand, is a type of "imaginative expression" and "loose, figurative, or hyperbolic language." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20–21 (1990). When rhetorical hyperbole is employed, the language itself "negates the impression that the writer was seriously maintaining that the plaintiff committed the particular act forming the basis of the alleged defamation." *Id. at* 21 (cleaned up). For example, as stated above, the loose language of internet fora portends to "reasonable readers" that "posts [are not] conveying factual information." *Murray*, 2020 WL 6728812, at *9–10 (citation omitted).

Here, a patient referring to a doctor who performed an alleged botched procedure a "butcher," is classic opinion. *Hallmark Builders, Inc. v. Gaylord Broad. Co*., 733 F.2d 1461, 1464 (11th Cir. 1984) (under Florida law, "[a] false statement of fact is the sine qua non for recovery in a defamation action.").

Courts have routinely found similar statements to be protected. *See, e.g.*, *Hay v. Independent Newspapers, Inc*., 450 So. 2d 293, 295–96 (Fla. 2d DCA 1984) (statements referring to the plaintiff as a "crook" and a "criminal" are statements of opinion); *Horsley*, 292 F.3d at 701–02 (finding statement that plaintiff was "an accomplice to murder" was rhetorical hyperbole); *Fortson v. Colangelo*, 434 F. Supp. 2d 1369 (S.D. Fla. 2006) (calling member of rival basketball team "thug," "thugged out," "a vacant lot," a "meaningless mass" is rhetorical hyperbole); *Colodny*, 936 F. Supp. at 924 (letter stating that author's book is a "fraud" is pure

opinion); *Demby*, 667 So. 2d at 354 (letter accusing animal control director of being "inhumane" and "unreasonable" is pure opinion); *Pullum v. Johnson*, 647 So. 2d 254, 257 (Fla. 1st DCA 1994) (calling plaintiff a "drug pusher" amounted to rhetorical hyperbole, which negated impression that defendant was stating actual facts about the plaintiff); *Zorc v. Jordan*, 76 So. 2d 768 (Fla. 4th DCA 2000) (statements about mayor who "influence[d]" property values, and whose actions were "unethical" and "perhaps illegal" were protected opinions); *Turner*, 879 F.3d at 1264-66 (report finding that plaintiff engaged in "homophobic taunting" and exercised "poor judgment" was protected opinion based on the known, disclosed facts).

Because the statement is protected speech and all would require additional explanation or context to establish the alleged defamatory nature of the statements, Plaintiffs cannot show any possible conclusion that these statements could constitute defamation, let alone defamation *per se*. *Scobie*, 2013 WL 3776270, at *2-3.

### 4. Plaintiffs have not shown any statement was made to a third party.

Further, Plaintiffs cannot establish publication of any statement to a third party.

To show publication, Plaintiffs must allege the "identity of the particular person to whom the remarks were made with a reasonable degree of certainty" to afford Defendants "enough information to determine affirmative defenses." *Aflalo v. Weiner*, 2018 WL 3235529, at *4 (S.D. Fla. July 2, 2018) (quoting *Ward v. Triple Canopy, Inc.*, No. 8:17-cv-802-T-24 MAP, 2017 WL 3149431 (M.D. Fla. July 25, 2017)); *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1027 (Fla. 3d DCA 1981). In *Buckner*, the court found that the plaintiff had not adequately pleaded the publication element of defamation by alleging the defamatory remarks were made to "numerous third parties on numerous occasions." 403 So. 2d at 1027–28. This was insufficient because a complaint must identify the particular person to whom the remarks are made with a

reasonable degree of certainty. *Id.* Similarly, in *Aflalo*, the court dismissed a claim that publication was met because a statement was put on a "Facebook wall 'for all to see'" because it failed to identify a reasonable degree of certainty as to whom the post was made. *Aflalo,* 2018 WL 3235529, at *4.

Plaintiffs have not pleaded any facts that demonstrate publication of any statements to any third parties. Further, their efforts to claim that text messages to their agents constitute defamation also fail, as Plaintiffs' agents are not third parties.

**B.  Plaintiffs Fail to Demonstrate the Requisite Degree of Fault—Actual Malice**

Normally, a libel plaintiff must allege acts sufficient to show the defendant acted with the requisite degree of fault. When the claim is defamation *per se*, a libel plaintiff need not prove malice except when a privilege applies. *Wolfson*, 273 So. 2d at 777. Because Plaintiffs seek damages for defamation *per quod* and because the opinion privilege applies here—as the statements attributed to Mr. Gile, appear from the limited context in the Complaint to relate to his opinion of Dr. Bolton—Plaintiffs are required to show actual malice. They cannot.

Where, as here, the Dr. Bolton is a public figure, he must allege that the defendant published statements at issue with actual malice—with knowledge of their falsity or with a reckless disregard for their truth or falsity. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 (1974); *Rasmussen v. Collier Cnty. Publ'g Co.*, 946 So. 2d 567, 570 (Fla. 2d DCA 2006); *Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1239 (11th Cir. 1999). Plaintiff's Complaint does not meet this daunting standard.

Whether Dr. Bolton is a public figure is a "question of law to be determined by the court." *Mile Marker, Inc.*, 811 So. 2d at 845. It is appropriate for this Court to determine this status as a public figure on a motion to dismiss. *Turner*, 879 F.3d at 1271 (finding plaintiff to be

a public figure and affirming dismissal); *Michel*, 816 F.3d at 706 (same). There are two categories of public figures: general purpose and limited purpose. *Turner*, 879 F.3d at 1272. "General public figures are individuals who, by reason of fame or notoriety in a community, will in all cases be required to prove actual malice." *Id.* By contrast, limited purpose public figures are those "who have thrust themselves forward in a particular public controversy and are therefore required to prove actual malice only in regard to certain issues." *Id.*; *see also Gertz*, 418 U.S. at 351.

The inquiry into whether a plaintiff is a limited-purpose public figure involves three steps: (1) identifying whether there is a public controversy; (2) determining whether plaintiff played a central role in the controversy; and (3) determining whether the challenged statements were germane to the plaintiff's role in the controversy. *Friedgood v. Peters Publ'g Co.*, 521 So. 2d 236, 239 (Fla. 4th DCA 1988); *Della-Donna v. Gore Newspapers Co.*, 489 So. 2d 72, 76 (Fla. 4th DCA 1986).

Here, Plaintiff essentially concedes that he is a limited public figure subject to the actual malice standard by calling himself an expert in his field and stating that Mr. Gile's posts were made with reckless disregard. Compl. ¶¶ 7, 33, 41, 51. Even if he had not made such concessions, he is a limited public figure because: (1) he operates in a highly regulated field—as a doctor—, *Green Grp. Holdings, LLC v. Schaeffer*, 2016 WL 6023841, at *15 (S.D. Ala. Oct. 13, 2016) (citing *Silvester v. Am. Broad. Cos., Inc.*, 839 F.2d 1491(11th Cir. 1988) for the proposition that the "highly regulated nature" of the jai alai industry underscored the "public nature of the controversy"); (2) he claims he is an expert in such field. *Colodny*, 936 F. Supp. at 922 (quoting *Silvester*, 839 F.2d at 1494 (11th Cir.1988)).

Because Dr. Bolton is a public figure, he must meet the "daunting" standard of actual malice. *Klayman v. City Pages*, 2015 WL 1546173, at \*40 (M.D. Fla. Apr. 3, 2015). Failure to do so will lead to dismissal of the action. *See Turner*, 879 F.3d at 1274 (affirming dismissal of defamation case brought by limited-purpose public figure for failure to adequately plead actual malice). A plaintiff must do more than invoke the "magic words" of actual malice; failure to do so dooms a plaintiff's claim. *See, e.g., Baker v. Joseph*, 938 F. Supp. 2d 1265, 1269 (S.D. Fla. 2013). Instead, Dr. Bolton must "set forth facts which are legally sufficient to establish actual malice." *Frieder v. Prince*, 308 So. 2d 132, 134 (Fla. 3d DCA 1975) (no actual malice alleged); *Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 43 (Fla. 4th DCA 2010) (there must be evidence to "permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [their] publication.") (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)).

Plaintiffs offer no evidence other than conclusory allegations. Plaintiff's invocation of the "magic words" alone cannot demonstrate the requisite degree of fault. *Readon*, 317 So.3d at 1235 (it is not merely a defendant's "failure to investigate," but her "purposefully avoid[ing] further investigation with the intent to avoid the truth," quoting *Michel*, 816 F.3d at 701–02. A libel plaintiff cannot prove the defendant's subjective awareness of probable falsity where the defendant's allegations "are supported by a multitude of previous reports upon which [he] reasonably relied." *Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859, 862 (5th Cir. 1978); *Moore v. Cecil*, 488 F. Supp. 3d 1144 (N.D. Ala. 2020) (no subjective awareness of falsity by use of term "pedophile" or "child molester" in reference to Roy Moore when use was supported by prior reports of misconduct). Nothing in the Complaint suggests fabrication or falsity that rises to the level of actual malice. *St. Amant*, 390 U.S. at 732 (U.S. Supreme Court has explained,

"actual malice" is generally limited to circumstances where a "story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call."). For this reason, the Complaint fails.

### C. Plaintiffs Failed to Plead Special Damages for Defamation Per Quod

In Count II, Plaintiffs seek liability for defamation. They do not seek "special damages" however. For defamation *per se* claims, courts have found that proof of special damages is not necessary. *Campbell v. Jacksonville Kennel Club, Inc.*, 66 So.2d 495, 497 (Fla. 1953). But for defamation *per quod* claims, such proof is required. *Wolfson*, 273 So.2d at 776. Plaintiff neither invokes the correct damages standard in Count II nor identifies any damages that would fit within that framework. Such special damages "do not result by implication of law," and "it is necessary for a plaintiff to show his special damages proximately resulted from the defamation." *Grayson v. No Labels, Inc.*, 601 F. Supp. 3d 1251, 1257 (M.D. Fla. 2022) (quoting *Army Aviation Heritage Found. & Museum, Inc. v. Buis.*, 504 F. Supp. 2d 1254, 1260 (N.D. Fla. 2007)). "[T]he chief characteristic of special damages is a realized or liquidated loss." *Grayson*, 601 F. Supp. 3d at 1257 (quoting *Anderson v. Smith*, 2020 WL 10058207, at *3 (M.D. Fla. Mar. 24, 2020)). Because Plaintiffs do not identify any realized or liquidated loss in the Complaint, Count II should be dismissed.

### D. Plaintiffs' Tortious Interference Claim is Barred Under the Single-Action Rule

Plaintiffs' tortious interference claim in Count IV is barred under the single-action rule because it is entirely premised on the alleged defamatory content. Under Florida law, the "single action rule" provides that the publication of allegedly false and defamatory material gives rise to but a single cause of action—defamation. *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992); *see also Ovadia v. Bloom*, 756 So. 2d 137, 140–41 (Fla. 3d DCA 2000) (noting the single action

rule "does not permit multiple actions to be maintained when they arise from the same publication upon which a failed defamation claim is based") (emphasis in original). The purpose of the single action rule is to ensure that a plaintiff does not use alternative tort claims to evade the requirements of defamation law, including to circumvent the two-year statute of limitations or avoid pre-suit notice requirements, by redescribing a defamation action as another tort. *Fridovich*, 598 So. 2d at 69–70; *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 608 (Fla. 4th DCA 1975) (single action rule precludes interference claims premised upon allegedly defamatory statements for which no presuit notice was supplied)

The rule prevents litigants from making an end run around the privileges, protections, and defenses available in defamation actions by simply renaming their defamation claims as some other tort. *Orlando Sports Stadium*, 316 So. 2d at 609; *see also Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002) ("The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm" (citation omitted)). And it prohibits defamation claims from being "re-characterized in additional, separate counts […] if the claim arises from the same publication." *Kamau v. Slate*, 2012 WL 5390001, at *7 (N.D. Fla. Oct. 1, 2012), report and recommendation adopted, 2012 WL 5389836 (N.D. Fla. Nov. 5, 2012). Put simply, when a claim overlaps with defamation, it must be treated as a defamation claim. *Seminole Tribe v. Times Publ'g*, 780 So. 2d 310, 318 (Fla. 4th DCA 2001).

Here, the same body of facts pervades both Plaintiffs' defamation and tortious interference claims. Plaintiffs claim Mr. Gile tortiously interfered through improper means because he published false statements. Compl. ¶ 47. This is precisely the type of claim the

single-action rule was designed to prevent.

Because the same set of operative facts are alleged in support of Plaintiffs' tortious interference and defamation claims, they are treated as the original defamation claim, subject to the same conditions, elements, privileges, and defenses applicable in the law of defamation. *See Seminole Tribe*, 780 So. 2d at 318. The "single action rule requires" dismissal of Plaintiffs' extraneous claims with prejudice. *See, e.g., Callaway Land & Cattle Co.*, 831 So. 2d at 208 (barring duplicative tortious interference claims); *Orlando Sports Stadium*, 316 So. 2d at 609 (barring duplicative tortious interference claims); *Tobinick v. Novella*, 2015 WL 328236, at *11 (S.D.Fla. Jan. 23, 2015) (dismissing claim based on the allegedly false and defamatory statements that established defamation claim); *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014) (barring claims where plaintiff did not show "the existence of any independent facts, distinct from the subject of his defamation claim, on which he base[d] these additional claims"); *Ortega Trujillo v. Banco Cent. Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998) (allowing defamation claim to proceed but dismissing additional claim with prejudice because it was based on the "same facts giving rise to the claim for defamation.").

### E. Plaintiff Fails to Plead a Third Party to the Alleged Business Relationship

As additional grounds for dismissal of Count IV, Plaintiffs fails to plead a third party or "stranger" to the alleged business relationship. Under Florida law, a tortious interference with a business relationship requires: "(1) the existence of a business relationship ... (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Swope Rodante, P.A. v. Harmon*, 85 So. 3d 508, 509 (Fla. 2d DCA 2012) (quoting *Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985)). For the interference to

be unjustified, "the interfering defendant must be a third party, a stranger to the business relationship." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999) (collecting cases). Plaintiffs claim, on information and belief, that Mr. Gile interfered with Plaintiffs' customers and clients. But those allegations are conclusory and must be disregarded. *See Scott v. Experian Info. Sols., Inc.*, 2018 WL 3360754, at *6 (S. D. Fla. June 29, 2018) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard."). Stripping those allegations from the Complaint renders Count IV impermissible.

### F.  Plaintiffs Fail to State a Claim for Breach of Oral Contract

Like with defamation, the Court should apply state law to the alleged oral contract, as this is a question of contract interpretation under diversity jurisdiction. *Canal Indem. Co. v. Margaretville of NSB, Inc.*, 562 F. App'x 959, 961 (11th Cir. 2014); *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143 (11th Cir. 2010). "For there to be an enforceable oral contract, there must be an offer, an acceptance, consideration, and sufficient specification of essential terms so that the obligations involved can be ascertained." *New Dirt, Inc. v. Harrison*, 182 So. 3d 773, 774-75 (Fla. 5th DCA 2015) (citing *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla. 2004)).

Plaintiffs' oral contract claim fails for number of reasons on the elements.

Plaintiffs allege that the contract was reduced to writing—they say it was "informally memorialized." Compl. ¶ 24. Such allegation negates the oral contract theory upon which they rely. On a Rule 12(b) motion, courts can properly consider the complaint, documents attached to it, documents that central to the plaintiff's claim where "the authenticity of the document is

16

not challenged." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005). Here, Plaintiffs append text messages where Mr. Gile explained that he deleted posts that he previously made (which Plaintiffs do not challenge or say were "undeleted") and that he did not want to sign a release or legal document. *See* Compl. Exs. 2-3. Mr. Gile also explained that his agreement was *contingent* on dismissal of something—the Complaint fails to allege the full correspondence. Without the full communication concerning the arrangement, the Complaint should be dismissed. But regardless, the Complaint alleges an oral contract; because it was reduced to writing, there is no oral contract and Count I should be dismissed.

Even so, it is apparent that Plaintiffs argue an oral contract exists—despite saying it was memorialized—to get around the fact that Mr. Gile did what he said he would—delete his old posts. Instead, they seek to import new terms that Mr. Gile clearly never agreed to based on the text exchange in the exhibits to the Complaint. That is, to permanently refrain from posting about Dr. Bolton in the future. It is clear from the communications in the Complaint that Mr. Gile would not sign a release and that his actions were contingent upon some other act. "In order to state a cause of action for breach of an oral—or any—contract, a plaintiff is required to allege facts, if taken as true, demonstrate that the parties mutually assented to 'a certain and definite proposition' and left no essential terms open." *Hollywood E. Artful Designs, Inc. v. Gutentag*, 2007 WL 4468703, at *2 (S.D. Fla. Dec. 18, 2007) (citations omitted). Here, there is no offer, acceptance, consideration, or sufficient specification of terms in the Complaint, and the actual text messages belie and contradict Plaintiffs' claims. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."). Because the text messages show

17

that there was never a meeting of the minds or sufficient specification of terms, Count I should be dismissed. And to the extent the Court disagrees, then it should find that the Complaint does not plausibly allege any breach, because Plaintiffs do not allege that Mr. Gile "undeleted" the deleted posts about Dr. Bolton.

Finally, even if Plaintiffs' contract theory made sense or was not negated by their own attachments to the complaint, the claim would fail under the Statute of Frauds. Section 725.01, Florida Statutes, commonly referred to as the statute of frauds, provides the following:

> No action shall be brought ... upon any agreement that is *not to be performed within the space of 1 year from the making thereof* ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.

§ 725.01, Fla. Stat. (emphasis added). That is, where a contract cannot be *fully* performed within a year, it must be reduced to writing. *L. Offs. of David J. Stern, P.A. v. Bank of Am. Corp.*, 2012 WL 112935, at *2 (S.D. Fla. Jan. 12, 2012); *See Byam v. Klopcich,* 454 So.2d 720, 721 (Fla. 4th DCA 1984). Under Plaintiffs' theory, Mr. Gile agreed to refrain from ever posting about Dr. Bolton or his company in the future. Forever. Forever is certainly more than a year. A promise not to post or comment about someone until the end of time cannot be fully performed within a year. And thus, Plaintiffs' attempt to import new terms into an effort to reach agreement in order to censor Mr. Gile and prevent him from exercising his right to speak critically about the service Dr. Bolton performed, cannot stand under Florida contract law.

### G.  Plaintiffs' Efforts to Silence Mr. Gile Violate the anti-SLAPP Statute

Florida enacted Section 768.295, Florida Statutes, to deter meritless claims aimed at silence comment and protected speech. § 768.295(1), Fla. Stat. The statute protects the "rights of free speech in connection with public issues" by shielding individuals and entities from the great

expense of meritless lawsuits. *Id.* To that end, the law prohibits anyone from bringing a lawsuit (a) that is "without merit," and (b) because the defendant "has exercised the constitutional right of free speech in connection with a public issue," which the statute defines as any written or oral statement "made in or in connection with a . . . news report, or other similar work." Id. at (2)(a), (3). The Florida Legislature included a fee-shifting provision in the statute that requires the court to award the defendant its reasonable attorneys' fees and costs incurred in connection with a claim that an action was filed in violation of the law. *Id.* at (4).

Florida federal courts have consistently applied the fee-shifting provision in Florida's anti-SLAPP law to deter SLAPP lawsuits that suppress First Amendment rights. *See, e.g., Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1120 (S.D. Fla. 2021) (granting defendants' fees and costs under Florida's anti-SLAPP statute which functions as a "garden variety fee shifting provision," and "does not 'answer the same question' as the Federal Rules") (citations omitted); *Bongino v. the Daily Beast Co.*, 477 Supp. 3d 1310 (S.D. Fla. 2020) (granting defendant fees and costs under Florida's anti-SLAPP statute and concluding that the statute "unequivocally" applies in federal court because it does not "conflict with any Federal Rules of Civil Procedure"); *Anderson v. Best Buy Stores L.P.*, 2020 WL 5122781, at *4 (M.D. Fla. July 28, 2020) (recommending granting a motion to dismiss and awarding the defendant reasonable fees).

This case meets both requirements of Florida's anti-SLAPP law.

First, as detailed above, Plaintiff's lawsuit is "without merit." § 768.295(3), Fla. Stat. Specifically, the allegations do not support a defamation claim as a matter of law. The attempts to fashion an oral agreement that would preclude Mr. Gile from ever speaking about Plaintiffs again is a brazen attempt to silence and suppress Mr. Gile's free speech rights, all in violation of the law. *Demby v. English*, 667 So. 2d 350, 355 (Fla. 1st DCA 1996) (quoting *United Sanitation*

19

*Services, Inc. v. City of Tampa,* 302 So. 2d 435 (Fla. 2d DCA 1974)).

Second, this lawsuit arises out of the exercise of "constitutional right of free speech in connection with a public issue," *id.*, because the statements at issue constitute a "written or oral statement that is protected under applicable law" and was "made in or in connection with" a "news report, or other similar work." *Id.* § 768.295(2)(a). In *WPB Residents for Integrity in Gov't, Inc. v. Materio*, Judge Gross concluded that the "plain language of the statute shows that the list is non-exclusive and that it protects other similar modes for widely disseminating protected First Amendment speech." 284 So. 3d 555 (Fla. 4th DCA 2019) (citing Samuel J. Morley, Florida's Expanded Anti-SLAPP Law: More Protection for Targeted Speakers , 90 Fla. B.J. 16, 22 (Nov. 2016) (surmising that the works are related in that they are formats "designed to communicate to or elicit viewpoints from members of the public on issues of public interest"). The alleged posts on Reddit to inform consumers about Dr. Bolton's transplant performance is a matter of public concern and social media fora like Reddit are the types of places where people go to discuss different opinions and viewpoints on a host of matters. Under these circumstances, an award of reasonable attorneys' fees and costs is appropriate. § 768.295(4), Fla. Stat.

## III.   CONCLUSION

For all these reasons, Defendant Bryan Gile requests that the Court grant this motion, dismiss Plaintiffs' Complaint, and award attorney's fees.

Dated: June 17, 2026.                          Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
SLATER LEGAL PLLC
9000 Dadeland Blvd. #1500
Miami, Florida 33156
james@slater.legal
Tel. (305) 523-9023

*Attorneys for Defendant Bryan Gile*