UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

|  |  |
|---|---|
| BOLTON MANAGEMENT, LLC and DR. BRETT BOLTON,<br><br>    Plaintiffs,<br><br>v.<br><br>BRYAN GILE,<br><br>    Defendant. | Case No. 26-cv-61415-WPD |

## DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS

Defendant Bryan Gile files this reply in support of his Amended Motion to Dismiss (ECF No. 15) (the "Motion") the First Amended Complaint (ECF No. 13) ("FAC").

I.      INTRODUCTION

Plaintiffs' Response to the Motion (ECF No. 17) fails to grapple with the serious deficiencies in the FAC. First, Plaintiffs cite *Miracle Surrogacy, LLC v. Monello-Fuentes*, 2026 WL 251776 (S.D. Fla. Jan. 30, 2026) for the idea that Mr. Gile allegedly calling Dr. Bolton a "butcher" or saying that Dr. Bolton "chose" his hairline on Reddit or other unidentified social media sites is sufficient to plead a claim for defamation. But when read closely, *Miracle Surrogacy* does not stand for that proposition. Indeed, no court could conclude that simply referencing two or three words in a vacuum is sufficient to demonstrate a statement capable of defamatory meaning. Next, their arguments on opinion or rhetorical hyperbole—devoid of any context to evaluate the statements—fare no better. Then, Plaintiffs all but concede that Dr. Bolton is a public figure, and in doing so do not render a persuasive argument that they have met

the daunting task of alleging actual malice. On the single-action rule, Plaintiffs claim that there is enough to fashion an independent tortious interference claim, but their pleading belies those arguments. As for the oral contract, Plaintiffs cannot argue their way out of changing their story to misrepresent the nature of the purported agreement. And even if there is enough to allege an oral agreement, permanently restraining Mr. Giles from speaking about Dr. Bolton is not a term that can be performed within a year, violating the statute of frauds. Last, the anti-SLAPP statute should apply here. For all these reasons, and the reasons set forth in the Motion, the FAC should be dismissed.

## II.     ARGUMENT

### A.  Plaintiffs fail to allege any defamatory statement.

In their Response, Plaintiffs concede that the only statements identified in the FAC are that Mr. Gile allegedly called Dr. Bolton a "butcher" or the "Bolton butcher," and that Mr. Gile purportedly wrote on social media that Dr. Bolton "chose" Mr. Giles' hairline for his hair transplant. (Resp. at 3–4). Plaintiffs, however, urge the Court not to dismiss the case because they have alleged other "detailed factual paragraphs" citing to paragraphs 13–16, 37–46, and 55–56 of the FAC. (*Id.* at 3). But nowhere in any of those paragraphs are the full measure of those statements (other than the cherrypicked words) or any other alleged defamatory statements. On this basis, the FAC fails in all respects.

Plaintiffs cite *Miracle Surrogacy, LLC v. Monello-Fuentes*, 2026 WL 251776, at *5 (S.D. Fla. Jan. 30, 2026) for the proposition that the "insistence that a complaint alleging defamation must include more than a description of the alleged statements" is not "impose[d]" by the Eleventh Circuit. There, defendants asserted that "key words [were] omitted from the allegedly defamatory statements" in the complaint. *Id.* at *4. But there, the complaint "and its attached

2

exhibits include[d] the substance, medium, and context of each defamatory statement" and to the extent there were key words omitted, the plaintiffs "incorporated the videos, screenshots, and posts containing those statements as exhibits" to the complaint. *Id*. at *5. Judge Bloom found that "given the accompanying exhibits and the fact that a plaintiff need not quote the defamatory statements verbatim in the complaint, Plaintiffs' allegations are sufficient to survive the Motion to Dismiss." *Id.* There, although the plaintiffs "did not reproduce each defamatory statement verbatim, they alleged the substance of the statements with reasonable specificity." *Id.* at *6 (collecting cases). Judge Bloom found that the absence of words like "possible" and "situations," did not materially alter the substance of the statements to render them incomplete and deprive the defendants of fair notice, and that "to the extent that the Court needs full, complete statements or additional context to properly evaluate the defamatory statements in question, Plaintiffs have provided the Court with exhibits that not only provide the full statements, but also the necessary context surrounding the statements." *Id.*

In contrast, here, there are no statements, screenshots, quotations, or any other matters that would shed light on whether the uses of "butcher" or "chose" are defamatory. Unlike *Miracle Surrogacy*, Plaintiffs here have not provided anything in or with the FAC that would provide fair notice to Mr. Gile as to the defamatory statements. On this basis, the FAC should be dismissed.

Next, as to the complete substance of what is alleged—that Dr. Bolton is a "butcher" who "chose" Mr. Gile's hairline for his hair transplant—even devoid of context such statements are nonactionable. To get around this, Plaintiffs argue that calling Dr. Bolton a butcher is a mixed expression of opinion and it implies undisclosed defamatory facts, like a lack of training or skill, all while Mr. Gile "falsely h[eld] himself out to have first-hand knowledge of medical industry

3

standards, procedures, and best practices." (Resp. at 5–6). That is not the law. As Mr. Gile explains in the Motion, speakers with no more expertise than Mr. Gile were not liable for defamation for calling individuals crooks, thugs, criminals, drug pushers, and other types of statements. A former patient calling his surgeon a "butcher" falls squarely within this framework and category of opinion or hyperbole.

While Plaintiffs cite this Court's decision in *Stern v. O'Quinn*, which concluded that it was too early in the case to determine whether the statements were opinion or rhetorical hyperbole, there the Court noted that in making such determination "the Court must consider the statements in their totality." *Stern v. O'Quinn*, 2008 WL 11401794, at *7 (S.D. Fla. Aug. 8, 2008) (citing *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 705 (Fla. 3d DCA 1999)). Here, it is not possible to consider the statements in their totality because Plaintiffs have not alleged them. But even so, calling your doctor a "butcher" following surgery "negate[s] the impression that the writer was seriously maintaining that [the plaintiff] committed the [particular act forming the basis of the alleged defamation]." *Stern*, 2008 WL 11401794, at *7 (quoting *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006)) (alterations in original). No reader could reasonably believe that Dr. Bolton literally butchered Mr. Gile.

The literal meaning of that word butcher, in relevant part, is either "a person who slaughters animals or dresses their flesh," "one that kills ruthlessly or brutally," or "one that bungles or botches." *See* MERRIAM-WEBSTER ONLINE, "Butcher," https://www.merriam-webster.com/dictionary/butcher. Because Mr. Gile was alive when he was alleged to have written the offending social media post or posts, no reasonable reader would believe that Dr. Bolton killed or slaughtered him. The secondary definition—"one that bungles or botches"—is

4

classic opinion. In no sense of the word, irrespective of the context, could Mr. Gile have defamed Dr. Bolton by calling him a "butcher."

The analysis is the same for the claim of Dr. Bolton "choosing" Mr. Gile's hairline. While it lacks context, even without context it is clear that it is not capable of defamatory meaning for the reasons explained in the Motion.

Finally, as to Plaintiffs' citation to *Milkovich* that "[s]imply couching such statements in terms of opinion does not dispel these implications; and the statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar,'" (*see* Resp. at 5) (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18–19 (1990)), such argument has no merit here. The "fact" Plaintiffs allege is implied here—that Dr. Bolton is unskilled and performs botched surgeries—is a subjective assessment of Mr. Gile's surgical outcome, precisely the sort of judgment on which reasonable minds can differ and the reason online reviews are not read as factual reporting. *Murray v. Pronto Installations, Inc.*, 2020 WL 6728812, at *6 (M.D. Fla. Nov. 16, 2020) ("a reasonable reader of Murray's Facebook post would have known that the statements therein were 'emotionally charged rhetoric' and the opinions of a frustrated employee who was immediately discharged after complaining about unpaid overtime.").

### B.  Plaintiffs cannot demonstrate the requisite degree of fault—actual malice.

The Court should find that Dr. Bolton is properly treated as a limited-purpose public figure. Plaintiffs do not dispute that the FAC repeatedly alleges Mr. Gile acted with "knowledge of falsity" and "reckless disregard." That language has legal significance only if the actual-malice standard governs.

Plaintiffs' Response asks the Court to consider whether Dr. Bolton has greater media access than a private individual and whether he voluntarily placed himself in a position inviting

public scrutiny. (Resp. at 7). Dr. Bolton, by his own pleading, operates a cosmetic surgery practice that markets elective procedures directly to consumers and holds himself out as an expert in the field. FAC ¶¶ 7–9.[1] A physician who advertises cosmetic services to the public and solicits patients through commercial and social-media channels has voluntarily entered the public marketplace for that service and invited the very consumer commentary of which he now complains. The Court should find that he is a limited-public purpose figure, and under such analysis conclude that Plaintiffs have not sufficiently alleged actual malice. That is, the FAC's bare assertions of malice and knowing falsity are insufficient. *Frieder v. Prince*, 308 So. 2d 132, 134 (Fla. 3d DCA 1975; *Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 43 (Fla. 4th DCA 2010) (there must be evidence to "permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [their] publication.") (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)).

### C.  The tortious interference claim is barred.

Next, Plaintiffs argue that their separate tortious interference claim is not barred by the single-action rule. They principally rely on their allegation in paragraph 23 of the FAC, which says, "Notwithstanding the false and defamatory statements made by Defendant, Defendant has also intentionally interfered with DR. BOLTON'S business and career by targeting potential clients of DR. BOLTON'S and convincing them not to go through with their surgeries." But these are again claims based on statements allegedly made by Mr. Gile. If these statements are

---

[1] Plaintiffs originally pleaded that Dr. Bolton was an "expert" in this field. (ECF No. 1 ¶ 7). But like stripping the complaint of the fact that there was no oral agreement because the parties purportedly memorialized their agreement by text message, here too the FAC no longer holds Dr. Bolton out as an expert to avoid a finding that he is a limited-purpose public figure. For the same reasons raised in the Motion for why the Court should consider the original complaint for the purpose of determining whether an oral agreement exists, the Court should consider Plaintiffs' original allegation that Dr. Bolton is an expert in the field of hair-transplant surgeries.

protected by privilege or not defamatory, by recasting them as a tortious interference claim, Plaintiffs attempt to strip protections and privileges afforded to Mr. Gile for his speech. *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 608 (Fla. 4th DCA 1975) (single action rule precludes interference claims premised upon allegedly defamatory statements for which no presuit notice was supplied). As argued in the Motion, the rule exists to prevent exactly what Plaintiffs are trying to do here—to recasting claims about speech as something other than defamation for which Mr. Gile would likely have a privilege or defense. *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002). Without allegations of anything other than *speech*—which is all Plaintiffs allege—they cannot maintain an independent tortious interference claim.

### D. Plaintiffs confirm they are transparently attempting to avoid a defense on the oral contract claim.

While Plaintiffs claim they have done nothing untoward by removing the allegation and purported evidence that the parties memorialized their agreement in writing, their Response is unconvincing. Plaintiffs removed these facts and documents in response to the original motion to dismiss, which criticized both the allegation and substance of the text messages. To get around these arguments, Plaintiffs amended their complaint as if these text messages never existed. Now Plaintiffs claim they "do not in the FAC *deny the existence of the text messages*." (Resp. at 10) (emphasis added). But removing them from the amended pleading is essentially the same thing. They claim they have a host of messages showing what the parties allegedly orally agreed to, but they are not including them now—following Mr. Gile's argument that the text messages unravel the oral contract claim. Plaintiffs assert that it would be inappropriate to include those messages, as they want to "maintain directness of the actual claims raised." Plaintiff instead state they

would likely produce the messages during discovery, but—while being parties to these purported text messages—also "are not yet in possession" of all of them. (*Id.*).

What a mind-boggling series of sentences: Plaintiffs expressly did not deny the existence of text messages they removed from the amended complaint; the text messages are a distraction; they will be produced later; but only when Plaintiffs have all of them in their possession. What Plaintiffs mean is: Plaintiffs made a misrepresentation in their amended complaint that was done in a transparent manner to avoid the arguments raised in the first motion to dismiss; Plaintiffs do not want the Court to consider the text messages because it will be clear there was no oral contract and no meeting of the minds; and also, Plaintiffs, despite being parties to these alleged messages, cannot provide them now to help the Court clearly determine that there is no oral agreement or meeting of the minds. This is so clearly a transparent and deceptive attempt to eke through the pleading stage on a claim that has no business surviving a Rule 12 motion. Plaintiffs' position that Mr. Gile was required to serve a safe harbor under Rule 11 to advance his arguments on this conduct ignores that the Court can consider these issues on its own under Rule 11 or its inherent power under section 1927. The Court should consider the original allegations when reviewing the FAC, find that the allegations and text messages show there is no oral contract, and seriously consider whether Plaintiffs' nebulous explanations here are sufficient to avoid sanctions.

### E.  The oral contract claim fails on the merits.

Putting aside the new allegations and Plaintiffs' representations in their Response, the Court can also find that the oral contract claim fails to state a claim based solely on those allegations in the FAC.

8

Plaintiffs claim that Mr. Gile raises a "factual question" which is not appropriate for resolution at this stage. Not so. Mr. Gile has explained—and common-sense dictates—that a promise to never speak about Dr. Bolton or his medical practice *ever again* cannot be performed within a year. Even if performance began immediately, as Plaintiffs suggest, it would not be possible for the alleged promises—which include to permanently refrain from speaking about Plaintiffs—to be fully performed within a year. While Plaintiffs stake their claim on the deletion of posts and agreement not to bring legal action as the immediate performance, they are clear that Mr. Gile's allegedly breached the oral contract by failing "to cease making any further negative, false, and defamatory posts about the Plaintiffs." FAC ¶ 33.

Florida's statute of frauds "bars enforcement of an oral contract that was intended by the parties to last longer than a year, ..." *Butterworth v. Lab'y Corp. of Am. Holdings*, 581 F. App'x 813, 819 (11th Cir. 2014). While some contracts that are terminable in under a year but call for an otherwise indefinite period, may fall outside the statute of frauds, that is not the case here. *See Cabanas v. Womack & Bass, P.A.*, 706 So. 2d 68, 69 (Fla. 3d DCA 1998) ("Contracts for employment which are terminable at will by either party for an indefinite period of duration do not fall under the statute of frauds."); *MacIntyre v. Lender Processing Servs. Inc.,* No. 3:13-cv-89, 2014 WL 12689881, at *4 (M.D. Fla. Apr. 29, 2014) ("[E]ven if the intent of the parties was to continue the Agreement for an indefinite period of time, the 'at-will' provision removes the Agreement from the purview of the statute of frauds.") (citing *Carbanas*, 706 So. 2d at 69). Here, Plaintiffs' allegations are clear: they allege the agreement would require Mr. Gile to permanently refrain from speaking about them and it was not terminable for any reason. *See Griffin v. Motorsport Games Inc.*, 2025 WL 1330191, at *7 (S.D. Fla. May 7, 2025) (finding the oral contract violated the statute of frauds because, while performance—an employment

relationship—was undertaken right away, both parties anticipated the relationship would last at least 15 months). On this basis, the purported oral contract violates the statute of frauds; the claim should be dismissed.

### F.   The anti-SLAPP statute applies.

Mr. Gile relies on his argument in the Motion as to the applicability of Florida's anti-SLAPP statute here. In reply, he addresses one point. Plaintiffs claim their lawsuit is made in good faith, but claim that the purpose of it is "solely seek to enjoin Defendant from further publish[ing] defamatory statements concerning Plaintiffs, and to remedy the harm already caused to Plaintiffs by Defendant's conduct." (Resp. at 14). As explained in the Motion, Florida law prohibits libel-plaintiffs from seeking to prevent further publishing of alleged defamatory statements. *Demby v. English*, 667 So. 2d 350, 355 (Fla. 1st DCA 1996). But Plaintiffs do not shy away from this; they lean into it. While the burden is on Mr. Gile in federal court at this stage, Plaintiffs have made it clear that the "sole" bad-faith purpose of this lawsuit is to unlawfully silence Mr. Gile from criticizing Dr. Bolton for botching his hair transplant. On this basis, there is nothing more Mr. Gile needs to say or prove to show that this meritless lawsuit violates the anti-SLAPP statute.

### III.   CONCLUSION

For all these reasons, the Court should dismiss Plaintiffs' First Amended Complaint.

Dated: July 28, 2026.                          Respectfully submitted,

                                               */s/ James M. Slater*
                                               James M. Slater (FBN 111779)
                                               SLATER LEGAL PLLC
                                               9000 Dadeland Blvd. #1500
                                               Miami, Florida 33156
                                               james@slater.legal
                                               Tel. (305) 523-9023

                                               *Attorneys for Defendant Bryan Gile*